**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

United States Courts
Southern District of Texas
FILED

JUL 1 1 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| **LINDA HAIR** | § | |
| | § | |
| **V.** | § | **C.A. NO. 2:05-CV-00350** |
| | § | |
| **GOLDEN CORRAL CORPORATION** | § | **JURY DEMAND** |

**DEFENDANT GOLDEN CORRAL CORPORATION'S TRIAL BRIEF REGARDING**
**TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.0105**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW DEFENDANT, Golden Corral Corporation, and files its brief demonstrating that under TEX. CIV. PRAC. & REM. CODE § 41.0105 evidence of medical bills that are written off is not admissible, showing as follows:

**I.**

At issue in this case are certain medical bills that have been "written off" by Linda Hair's treating physicians.  See Appendix 1: Billing Records from Dr. Samuel Hudson.  Section 41.0105 of TEX. CIV. PRAC. & REM. CODE states: "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."

Linda Hair should not be allowed present evidence or recover for medical charges that have been written off because the charges were not "paid or incurred."  An incurred expense in reference to medical bills must be one that is to be repaid, "not an invoice billed with the expectation of  no remuneration."  Joel J. Steed, *Medical Damages After HB 4*, State Bar of Tex. Advanced Personal Injury Law Course (2004) at 3.[1]  Hair should not be allowed to present

---

[1] A copy of the article is attached as Appendix 2.

evidence of medical bills for which her providers no longer seek recovery.  To allow such would permit the Plaintiff a windfall that is contrary to the intentions of § 41.0105.  *Id.*

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
     Timothy D. McMurtrie
     State Bar No. 13813900
     Federal I.D. No. 11806
     Ralph F. Meyer
     State Bar No. 13813900
     Federal I.D. No. 2831
     Jeffrey J. Grime
     State Bar No. 24041012
     Federal I.D. No. 37667
     1300 Frost Bank Plaza
     802 North Carancahua
     Corpus Christi, Texas 78470
     (361) 884-8808
     (361) 884-7261 Facsimile
     **ATTORNEYS FOR DEFENDANT**
     **GOLDEN CORRAL CORPORATION**

**OF COUNSEL:**

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing instrument was served by the means indicated to the counsel listed below on this _____ day of July, 2006.

**VIA ELECTRONIC OR HAND DELIVERY**
Mr. Les Cassidy
Cassidy & Raub
814 Leopard Street
Corpus Christi, Texas 78471

_____
    **OF ROYSTON, RAYZOR, VICKERY  WILLIAMS, L.L.P.**

# APPENDIX 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LINDA HAIR                              §
                                        §
V.                                      §              CASE NO. 2:05-CV-00350
                                        §
GOLDEN CORRAL CORP.                     §

DIRECT QUESTIONS TO BE PROPOUNDED TO
THE CUSTODIAN OF BILLING RECORDS FOR:

COASTAL BEND BONE & JOINT CLINIC / SAMUEL HUDSON, M.D.
2600 LAKEVIEW DR.
ROCKPORT, TEXAS 78382

RECORDS PERTAIN TO:  LINDA L. HAIR
SSN:  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
DOB:  1/9/41

1.      STATE YOUR NAME, ADDRESS AND OCCUPATION.
        ANSWER: Camille M. Hudson, 120 Flag Lake Dr., Ste I, Lake Jackson, TX 77566 - manager

2.      STATE WHETHER OR NOT YOU ARE A CUSTODIAN OF BILLING RECORDS
        FOR THE ABOVE NAMED PLACE OF BUSINESS.
        ANSWER: yes

3.      STATE WHETHER OR NOT YOU HAVE IN YOUR CUSTODY OR SUBJECT TO
        YOUR CONTROL THE RECORDS PERTAINING TO THE ABOVE NAMED
        INDIVIDUAL.
        ANSWER: yes

4.      PLEASE HAND TO THE NOTARY PUBLIC TAKING THIS DEPOSITION A
        COMPLETE COPY OF ALL SUCH RECORDS.   HAVE YOU DONE AS
        REQUESTED?
        ANSWER: yes

5.      PLEASE STATE WHETHER OR NOT YOU CAN VERIFY THAT THE RECORDS
        YOU HAVE FURNISHED TO THE NOTARY PUBLIC IN RESPONSE TO THE
        FOREGOING QUESTIONS ARE A COMPLETE AND ACCURATE COPY OF
        THE RECORDS.
        ANSWER: yes

6.      PLEASE STATE WHETHER OR NOT THE RECORDS YOU HAVE FURNISHED
        TO THE NOTARY PUBLIC IN RESPONSE TO QUESTION NO. 4 WERE KEPT IN
        THE REGULAR COURSE OF BUSINESS.
        ANSWER: yes

7. PLEASE STATE WHETHER OR  NOT IT WAS IN THE REGULAR COURSE OF BUSINESS FOR AN EMPLOYEE OF THE OFFICE, WITH THE PERSONAL KNOWLEDGE OF THE ACTS RECORDED TO MAKE THIS RECORD OR TO TRANSMIT INFORMATION, WHICH IS INCLUDED IN THIS RECORD.
ANSWER: _____ Yes _____

8. PLEASE STATE WHETHER OR NOT THE BILLING RECORDS YOU HAVE FURNISHED TO THE NOTARY PUBLIC IN RESPONSE TO THE FOREGOING INQUIRIES WERE MADE AT OR NEAR THE TIME OF THE ACT WHICH IS RECORDED, OR REASONABLY SOON THEREAFTER.
ANSWER: _____ Yes _____

9. PLEASE STATE THE TOTAL AMOUNT OF THE CHARGES INCURRED BY THE ABOVE NAMED PATIENT BEGINNING ON: 2/20/04.
ANSWER: $ 3,415.00 _____
AND THE TOTAL AMOUNT OF THE CHARGES INCURRED PRIOR TO: 2/20/04.
ANSWER: $ 0 _____

10. PLEASE STATE THE AMOUNT PAID BY THE PATIENT OR FOR THE PATIENT FOR MEDICAL TREATMENTS FROM AND AFTER 2/20/04.
ANSWER: $ 0 _____

11. PLEASE STATE THE BALANCE ON THE ACCOUNT TO DATE,
ANSWER: $ 3,415.00 _____
THE BALANCE ON THE ACCOUNT FOR CHARGES FROM AND AFTER 2/20/04.
ANSWER: $ 3,415.00 _____
AND THE BALANCE ON THE ACCOUNT FOR CHARGES PRIOR TO 2/20/04.
ANSWER: $ 0 _____

15. PLEASE STATE THE TOTAL AMOUNT OF CHARGES FOR HEALTH CARE SERVICES WHICH WERE WRITTEN OFF BY THE HEALTH CARE PROVIDER.
ANSWER: $ 3,415.00 _____

X _Camille Hudson_____
WITNESS (CUSTODIAN OF RECORDS)

## CERTIFICATE OF SERVICE

BEFORE ME, THE UNDERSIGNED AUTHORITY, ON THIS DAY PERSONALLY APPEARED _Camille M. Hudson_____, KNOWN TO ME TO BE THE PERSON WHOSE NAME IS SUBSCRIBED TO THE FOREGOING INSTRUMENT IN THE

CAPACITY THEREIN STATED, AND ACKNOWLEDGED TO ME THAT THE ANSWERS TO THE FOREGOING QUESTIONS ARE TRUE AS STATED.  I FURTHER CERTIFY THAT THE RECORDS ATTACHED HERETO ARE EXACT DUPLICATES OF THE ORIGINAL RECORDS.

GIVEN UNDER MY HAND AND SEAL OF OFFICE,

THIS _26_ DAY OF _June_ , 200_6_.

*Melissa A. Hernandez*

NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

MELISSA A. HERNANDEZ
Notary Public, State of Texas
My Commission Expires
October 10, 2009

MY COMMISSION EXPIRES:
_10-10-2009_

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................. 1

II.  THE COLLATERAL SOURCE RULE AND RECOVERY OF PAST AND FUTURE  MEDICAL EXPENSES
     PRE HB4 AND SECTION 41.0105 Tex. Civ. Prac. and Rem. Code .................................. 1

III. THE COLLATERAL SOURCE RULE AND RECOVERY OF PAST AND FUTURE MEDICAL EXPENSES
     POST HB4 AND SECTION 41.0101 Tex. Civ. Prac. and Rem. Code. ................................ 2
     A.   Strict Statutory Construction and the Meaning of Sec. 41.0105 Tex.Civ.Prac&Rem.Code ............ 3

IV.  DEFENDING AGAINST PAST AND FUTURE MEDICAL EXPENSE CLAIMS POST HB4 AND SEC.
     41.0105 Tex.Civ.Prac.&Rem.Code. .......................................................... 4

APPENDIX A ......................................................................... 5
     Form Interrogatories and Deposition by Written Questions to Use in Discovering and Evaluating Medical
     Expense Damages.

## INDEX OF AUTHORITIES

**CASES:**

Baylor University Medical Center v. Travelers Ins. Co. 587 S.W.2d 501, 503-504 (Tex.App--Dallas 1979 ref. nre). . . . 3

Keever v. Finlan 988 S.W.2d 300, 308 (Tex.App.--Dallas 1999, no pet.); Beasley v. Peters 870 S.W.2d 191,196 (Tex.App.--Amarillo, 1994, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mundy v. Shippers Inc. 783 S.W.2d 743,745 (Tex.App--Houston [14th Dist.] 1990 writ denied). . . . . . . . . . . . . . . 1

Satsky v. United States of America 993 F.Supp. 1027 (S.D. Tex. 1998, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sweep v. Lear Jet Corp 412 F.2d 457 (5th Cir. 1969); Brown v. American Transfer and Storage 601 S.W.2d 931,934 (Tex. 1980); and Kainer v. Walker 377 S.W.2d 613, 617 (Tex. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex.Civ.Prac.&Rem.Code Sec. 18.001(e); Sloan v. Molandes 32 S.W.3d 745,752 (Tex.App--Beaumont 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES:**

TEX. CIV. PRAC. & REM. CODE § 41.0105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. CIV. PRAC. & REM. CODE § 74.301, *ET SEQ.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. CIV. PRAC. & REM. CODE § 18.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# BREAKING THE CODE IN MEDICAL NEGLIGENCE CASES (A DEFENDANT'S PERSPECTIVE)

## I.   INTRODUCTION

The right of a plaintiff to seek to recover past and future medical expenses has always had a significant impact on healthcare liability case evaluations. Past medical expenses which were billed to a patient were recoverable if found by the Judge or Jury to be reasonable and necessary. Future medical expenses proved reasonable and necessary through properly qualified medical expert testimony were likewise recoverable if a Judge or Jury accepted the testimony. The fact that a plaintiff had private insurance, governmental benefits or other third party payment arrangements covering past or future medical expenses was basically irrelevant due to the "collateral source" doctrine.   As a result, plaintiffs often were able to recover more damages in past and/or future medical expenses than the plaintiff individually was ever actually billed, incurred, or would ever be required to pay.   One of the many recent amendments within House Bill 4 (hereafter HB4) seems on its face to favor defendants limiting recovery of past and future medical expenses. How the courts interpret and apply this new provision (Tex. Civ. Prac. & Rem. Code Section 41.0105) will have significant impact on settlement and trial evaluations, and, as a result, on payments made in settlement of a case or in satisfaction of a judgment. Additionally, this new section will impact evidentiary issues at trial and alter the court's application of the collateral source rule.

## II.   THE COLLATERAL SOURCE RULE AND RECOVERY OF PAST AND FUTURE MEDICAL EXPENSES PRE HB4 AND SECTION 41.0105 Tex. Civ. Prac. and Rem. Code

Elements of damages recoverable by injured parties in Texas have always included past and future medical expenses regardless of whether those expenses were paid by the injured party or a third party payor. If there was evidence that the medical expenses were reasonable and necessary then the jury could award those expenses as damages in its verdict even if those expenses had been paid by a third party payor. The theory was that the injured party would reimburse the third party payor for payments made once the case was settled or a successful jury verdict was obtained. If the amount of medical expenses recovered through settlement or

verdict was greater than what was paid by the third party payor then the excess became a windfall to the injured party. The amount of medical expense actually paid by an injured party or third party payor was often irrelevant so long as there was evidence the expenses were reasonable and necessary. If reasonable and necessary, then the expenses were recoverable whether those expenses would ever be billed, incurred or paid.

As in most jurisdictions, it is the rule in Texas that a tortfeasor's obligation to make restitution for the injury he has caused is undiminished by any compensation received by the injured party from an independent or collateral source. Sweep v. Lear Jet Corp 412 F.2d 457 (5th Cir. 1969); Brown v. American Transfer and Storage 601 S.W.2d 931,934 (Tex. 1980); and Kainer v. Walker 377 S.W.2d 613, 617 (Tex. 1964). The general purpose of the collateral source rule is to burden the wrongdoer with the full consequences of his actions and prevent him from reaping benefits intended for the injured party. A recognized  exception has always existed when the evidence of the collateral source payment is offered for impeachment.. Mundy v. Shippers Inc. 783 S.W.2d 743,745 (Tex.App--Houston [14th Dist.] 1990 writ denied). Otherwise, payments made by health insurance companies, government benefit programs (both state and federal), workers comp carriers, employers, etc... have generally been deemed "collateral source" payments and inadmissible at trial to reduce a plaintiff's recovery of past or future medical expenses.   Despite this general rule, I believe there are ways to argue in pre-HB4 cases that under certain circumstances  the collateral source rule does not apply and that evidence of collateral payments should be admissible.

When an insurance carrier, governmental entity or other third party payor has an agreement with a physician, hospital or healthcare provider "to accept" certain amounts of compensation for "full payment" of services provided then the plaintiff should not be allowed to recover more than the agreed upon amount. Otherwise, the Plaintiff would receive a windfall because plaintiff would stand to receive more money than would ever be required to be paid for the medical services provided.   The Satsky case supports this argument. Satsky v. United States of America 993 F.Supp. 1027 ( S.D. Tex. 1998, no writ).

In Satsky, the plaintiff was injured in an automobile accident involving a vehicle driven by a Texas Army National Guardsman.  She was transported to Hermann Hospital (Hermann) in Houston Texas via life flight. She was  treated  and  the  "reasonable  charges"  for  her hospital stay totaled $124,229.05. Satsky was insured by Sanus/New York Life Health Plan, Inc. (Sanus) which

had a prepaid health care plan with Hermann wherein Hermann agreed "to accept the compensation set forth in ...the agreement as payment in full for all Hospital Services rendered to Members." Under the plan Sanus paid and Hermann accepted $42,300 in payment of Satsky's bills but Hermann filed an intervention in Satsky's lawsuit against the government seeking the balance of the "reasonable charges" less the amount paid by Sanus. The government filed a motion for summary judgment claiming no additional money was owed because Hermann accepted full payment in accordance with the prepaid health care plan. The Court granted the governments motion for summary judgment holding that Hermann had been fully paid under the prepaid plan and could not intervene to recover additional money.

While the Satsky case involved a lien, I believe the same arguments apply with regard to a plaintiffs claim for medical expenses. Just as the lien could only be valid if the patient/plaintiff Satsky owed an underlying debt to Hermann for the services rendered, a claim for past or future medical expenses can only be valid if the plaintiff or a third party payor owes for such medical expenses regardless of whether there is evidence that  the expenses are "reasonable and necessary." If the past medical bills have been paid in full for a negotiated amount or if future medical bills will be reduced by a negotiated amount then the plaintiff should not be able to recover more than the negotiated amount. As the Satsky court stated "(t)he fact that the United States was negligent...does not create a debt owed by Satsky to Hermann, nor by the United States to Hermann. As there is no debt, there can be no lien."

Evidence of a prepaid agreement or negotiated fee agreement and payments pursuant to the same are arguably admissible to prove no unpaid past medical expense exists and to refute an offer of evidence of "reasonable and necessary" medical expenses greater than what would ever be paid under the agreement. This makes sense and is arguably a derivation of the impeachment exception to the collateral source rule which has long been in effect.

It is clear that only "reasonable and necessary" medical expenses can be recovered by a plaintiff. Therefore, how can a past or future medical expense be reasonable or necessary when it exceeds the amount the healthcare provider billing for the services could ever recover from a third party payor due to a prepaid or negotiated fee agreement. The defendant should not be liable for damages beyond what the healthcare provider billing for the services has agreed to accept as a negotiated payment in full.  The defendant must determine through discovery the amount of past medical

billed to the plaintiff, paid by the plaintiff or on the plaintiff's behalf and the terms of any insuring agreement wherein past or future medical expenses are reduced or otherwise negotiated as paid in full. See Appendix A and paragraph IV below for further discussion.

## III. THE COLLATERAL SOURCE RULE AND RECOVERY OF PAST AND FUTURE MEDICAL EXPENSES POST HB4 AND SECTION 41.0101 Tex. Civ. Prac. and Rem. Code.

The new caps on non-economic damages recoverable against healthcare providers (Tex. Civ. Prac. & Rem. Code Sec. 74.301 et seq ) does not apply to past or future medical expenses which are considered economic damages. Therefore, what "reasonable and necessary" past and future medical expenses are in a given case greatly effects both settlement value and jury value. What a jury might find as reasonable and necessary expenses is greatly determined by the evidence allowed to establish or attack the same. Will the collateral source rule be stringently applied as in the past? Is the collateral sources rule now inapplicable in healthcare liability claims, or is it simply modified? New section 41.0105 of the Tex. Civ. Prac. & Rem. Code and how it is interpreted and applied will greatly effect the answers to these question.

Sec. 41.0105 states: "(i)n addition to any other limitation under law, recovery of medical and health care expenses is limited to the amount actually paid or incurred by or on behalf of the claimant. From a strict reading of the new law it would appear as though an evidentiary issue at trial or during settlement negotiations will always be what medical expense did the plaintiff/patient actually pay or incur in the past and what will be paid or incurred in the future. Managed care contracts, PPO contracts, state and federal benefit plans and other negotiated fee agreements would appear to be very relevant now in determining what past or future medical expenses have been "...actually paid or incurred by or on behalf of the claimant." Negotiated discounts or write offs between the third party payor and the billing individual or entity would certainly seem to define what expenses have been or will be "...incurred by or on behalf of the claimant." Clearly, the amounts shown as billed by a physician, lab or hospital are often far greater than any amount which the healthcare provider or institution will ever recover due to negotiated rate or fee agreements with third party payors; therefore, a plaintiff should not receive a windfall by simply providing evidence that the amounts stated on a bill are reasonable and necessary.

Based upon the history of the collateral source rule, the plaintiffs bar argues that negotiated fee discounts and write offs are irrelevant in terms of whether a past or future medical expense is "reasonable and necessary" and that to allow evidence of the discount or write off violates the collateral source rule. The Texas cases cited by Plaintiffs tends to support this position although the Satsky case mentioned above does provide Defendants with a rebuttal. Other jurisdictions have allowed evidence of discounts and write offs and the new Sec. 41.0105 appears to adopt a blend of rulings from other jurisdictions such that a jury can hear evidence regarding the amounts billed, reductions, discounts, write offs, and amounts paid by the patient or others to determine what is fair a reasonable. The amount "paid...by or on behalf of the claimant" would not appear to be subject to debate. What is meant by "incurred by or on behalf of the claimant" appears clear but will probably be debated. The plaintiffs bar will argue that "incurred" means amount billed regardless of whether or not the billing entity ever had any right or reason to believe that the amount billed, as opposed to a negotiated amount, would ever be paid.

**A. Strict Statutory Construction and the Meaning of Sec. 41.0105 Tex.Civ.Prac&Rem.Code**

Texas Courts have provided guidelines to be followed while performing statutory construction:

"1) The court must be governed by the rule of common sense;
2) The intention of the Legislature in enacting a statute is the statute itself and the aim and object of construction is to ascertain and enforce legislative intent and not to defeat, nullify, or thwart it;
3) The court must construe a statute as written and, if possible, ascertain its intention from the language used therein and not look for extraneous matters to be used as a basis for reading into a statute an intention not expressed or intended to be expressed therein;
4) If a statute is subject to two interpretations, it should not be given one that would render enforcement impossible; and
5) The general rules for the construction of all written instruments apply to the construction of legislative acts."

Baylor University Medical Center v. Travelers Ins. Co. 587 S.W.2d 501, 503-504 (Tex.App--Dallas 1979 ref. nre).

By using the first guide of common sense, it is clear that the 78th Legislature would not have incorporated this provision into HB4 if the status quo were to remain. The intention of the legislature is found in the statute itself. Using statutory construction as a vehicle to undermine or defeat the Legislature's purpose is contrary to the purpose of using statutory construction to begin with. The Plaintiff's Bar will be relying entirely on extraneous matters to be used as a basis for reading into this statute an intention not expressed in the plain meaning of the statute's language.

In examining the common sense usage and definitions of the word "incur", we find that it means more than being billed with no responsibility to repay.

*The American Heritage Dictionary*, Fourth Edition defines it as:

"To become liable or subject to as a result of one's actions; bring upon oneself." (emphasis added).

*Webster's Revised Unabridged Dictionary,* defines it as:

"To meet or fall in with, as something inconvenient, harmful, or onerous; to put one's self in the way of; to expose one's self to; to become liable or subject to; to bring down upon one's self; to contract; as, to incur debt, etc". (emphasis added).

These definitions show us that to "incur" something means to take on a elevated responsibility to the thing "incurred". In the realm of health care, an "incurred" expense must be one that is to be repaid, not merely a invoice billed with the expectation of no remuneration. Further, Texas authority has defined "incur" to mean "become liable to pay." Keever v. Finlan 988 S.W.2d 300, 308 (Tex.App.--Dallas 1999, no pet.); Beasley v. Peters 870 S.W.2d 191,196 (Tex.App.--Amarillo, 1994, no writ).

Therefore, using guidelines established by Texas Courts for statutory construction, the plain meaning of the language in the statute and judicial definitions of the term "incur", it is clear that the statute limits recovery of medical expenses to amounts paid or to amounts for which someone is liable to pay.

**IV. DEFENDING AGAINST PAST AND FUTURE MEDICAL EXPENSE CLAIMS POST HB4 AND SEC. 41.0105 Tex.Civ.Prac.&Rem.Code.**

Through written discovery, deposition testimony or affidavit proof, the defendant must develop evidence of what medical bills were actually paid by the plaintiff or on behalf of the plaintiff. Furthermore, anticipating a debate over what is meant by "...incurred by or on behalf of a claimant", there must be evidence developed with regards to amounts billed to a plaintiff or insurance carrier (third party payor) versus the amounts paid on same. Finally, there must be evidence that the bills have been paid in full to prove there is no more owed by or on behalf of the plaintiff. See Appendix A for sample forms.

Additionally, defense attorneys must be vigilant for plaintiffs attorneys proving up medical expenses by affidavits pursuant to Sec. 18.001 Tex.Civ.Prac.&Rem.Code. If the affidavit proves up the bills as reasonable and necessary then the same must be controverted by the defendant; otherwise, the Court will deem the affidavit sufficient proof to support an award of reasonable and necessary medical expenses equal to the amount reflected in the affidavit. Tex.Civ.Prac.&Rem.Code Sec. 18.001(e); Sloan v. Molandes 32 S.W.3d 745,752 (Tex.App.--Beaumont 2000, no pet.).

The controverting affidavit must be filed within thirty days after receipt of the original affidavit and not less than fourteen days prior to trial. The affidavit should specifically state why the original affidavit contains expense amounts which are not reasonable and necessary.

**APPENDIX A**

**INTERROGATORIES**

1.  Please provide the name, address and telephone number of all individuals or entities from whom you have received treatment for the injuries made the basis for this lawsuit.

2.  For all individuals or entities listed in interrogatory answer number 1 above, please answer the following for each:

a.  The total amount of the medical expenses billed to you;

b.  The name, address, and telephone number of any company insuring you or otherwise responsible for the bill;

c.  The policy number and claim number pertaining to same;

d.  The amount of the bill paid by you;

e.  The amount of the bill paid by any company insuring you or otherwise responsible for the bill;

f.  A statement as to whether or not the payments referenced in d. and e. above were accepted as full payment; and

g.  If full payment was not made then a statement as to the amount owed and the name, address and telephone number of the person or entity owing any remaining balance.

**Written Deposition Questions to Insurer**

1.  Any and all insurance agreements, contracts, policies or other written documents indicating a business or financial relationship between _____(Insurer) and _____(Healthcare Provider);

2.  Any and all documents indicating any agreements between_____(Insurer) and __(Healthcare Provider) that impact the amounts owed or payable on behalf of your insured and/or patient _____.

3.  Any and all documents related to fees paid for medical services for (Plaintiff), including any and all discounts, write-offs, releases and indemnity agreements;

4.  Any and all documents indicating a reduced or negotiated fee schedule between _____ (Insurer) and_____ (Healthcare Provider).

5.  Any and all documents indicating any outstanding balance owed to _____ (Healthcare provider ) by _____ (Insurer) for expenses associated with treatment of _____ (Plaintiff).

**Written Deposition Questions to Healthcare Provider Billing for Services**

(Same set of Written Deposition Questions can be sent to Healthcare Provider)
